UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAGNABILITIES, LLC,

                  Plaintiff,

        v.

JESSE ROSE d/b/a
MAGNAMAZING.COM,

                Defendant.

NO. CV-11-0115-EFS

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

    Before the Court, without oral argument, is Plaintiff's Motion for Default Judgment.  ECF No. 9.  For the reasons discussed below, the Court grants Plaintiff's motion and enters default judgment as requested, except forced transfer of "Magnamazing.com."

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

    Plaintiff is the registered owner of the U.S. Trademark Registration Number 3,824,916, "Magnabilities," for use with jewelry.  The

---

[1] When drafting this "Background" section, the Court accepts as true all well-pleaded factual allegations of Plaintiff's complaint.  *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986), *cert denied*, 484 U.S. 870 (1987)).

ORDER ~ 1

"Magnabilities" mark has acquired secondary meaning as emblematic of the magnetic jewelry offered by Plaintiff, and embodies the goodwill that Plaintiff has cultivated among consumers.

On January 12, 2011, Defendant registered the domain name "Magnamazing.com." Defendant operates "Magnamazing.com" as a web site for promoting and selling magnetic jewelry goods. Plaintiff alleges that Defendant's mark is confusingly similar to Plaintiff's "Magnabilities" mark, and that Defendant's goods directly compete with Plaintiff's jewelry goods. Plaintiff further alleges that Defendant's use of the "Magnamazing" mark is likely to cause confusion among consumers and damage the goodwill and reputation of Plaintiff's business.

Plaintiff filed this action on March 28, 2011, ECF No. 1, seeking injunctive relief, damages, costs, attorney's fees, and an order compelling Defendant to transfer the "Magnamazing.com" domain name to Plaintiff. Defendant was personally served on May 12, 2011. ECF No. 5-1. Defendant failed to appear within the necessary time frame, and to this date has not filed an answer to Plaintiff's complaint. Plaintiff moved for entry of default on June 3, 2011, ECF No. 4, and the Clerk of Court entered default against Defendant on July 5, 2011. ECF No. 8.

Plaintiff now moves for entry of default judgment. Plaintiff seeks an order enjoining Defendant from future use of the "Magnabilities" mark or any other confusingly similar mark, as well as an order compelling Defendant to transfer the "Magnamazing.com" domain name to Plaintiff.

///

//

/

ORDER ~ 2

**DISCUSSION**

**I.    Default Judgment**

    **A.    Legal Standard**

Under Federal Rule of Civil Procedure 55, obtaining a default judgment is a two-step process.  First, under rule 55(a), default may be entered by the Clerk of Court when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).  Once default has been entered, the party seeking default judgment may then file a motion for default judgment pursuant to Rule 55(b).  The decision whether or not to grant default judgment is within the discretion of district courts.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion to grant or deny a motion for default judgment, the Court considers the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

    **B.    Analysis**

Here, careful analysis of the *Eitel* factors supports Plaintiff's motion.  First, because Defendant has failed to participate in this litigation in any fashion, it is unlikely that Defendant will cease use of the "Magnamazing" mark in the absence of an entry of default judgment. *See Rockstar, Inc. v. Rap Star 360 LLC*, No. CV-10-00179-LRH-RJJ, 2010 WL

2773588, at *2 (D. Nev. July 8, 2010).  This will prejudice Plaintiff by depriving it of income as well as causing harm to its customer goodwill.

With regard to *Eitel*'s second and third factors, Plaintiff's complaint alleges sufficient factual grounds to demonstrate that Plaintiff's Lanham Act claims have merit.  Plaintiff's allegations, which are deemed admitted, are sufficient to establish both that 1) Plaintiff owns a valid trademark and 2) that Defendant used it in a manner that is likely to create confusion.  *See Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

While *Eitel*'s fourth factor, the sum of money at stake in the action, is not directly implicated by Plaintiff's motion because Plaintiff only seeks injunctive relief, it does not counsel against a grant of default judgment.

*Eitel*'s fifth factor, the possibility of dispute concerning material facts, also weighs in favor of default judgment.  Upon entry of default, all allegations of the complaint, except those relating to the amount of damages, will be taken as true.  *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Here, given the sufficiency of Plaintiff's complaint, no genuine dispute regarding a material fact would preclude a grant of default judgment.  *See Rockstar, Inc.*, 2010 WL 2773588, at *3.

*Eitel*'s sixth factor, whether Defendant's default was due to excusable neglect, favors default judgment because Defendant was personally served a copy of the summons and complaint and has neither appeared in this case nor opposed either of Plaintiff's two default-

1   related motions.   Thus, it does not appear that Defendant's default

2   resulted from excusable neglect.

3          Finally, *Eitel*'s seventh factor, the possibility of reaching a

4   decision on the merits, counsels in favor of default judgment because the

5   Court is unable to decide this case on the merits.   "Cases should be

6   decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d

7   at 1472.   "However, the mere existence of Fed. R. Civ. P. 55(b) indicates

8   that this preference, standing alone, is not dispositive." *PepsiCo, Inc.*

9   *v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)(internal

10  quotation omitted).   This is not a case in which the defendant defaulted

11  but later filed an untimely answer.   Rather, "Defendant's failure to

12  answer Plaintiff's complaint makes a decision on the merits impractical,

13  if not impossible." *Rockstar, Inc.*, 2010 WL 2773588, at *3.

14         For the foregoing reasons, the Court grants Plaintiff's motion for

15  default judgment.

16  **II. Permanent Injunction**

17         Plaintiff seeks a permanent injunction enjoining Defendant from any

18  further use of the "Magnabilities" mark or any other mark that is

19  confusingly similar to Plaintiff's.

20         The Lanham Act "vests the district court with the power to grant

21  injunctions according to principles of equity and upon such terms as the

22  court may deem reasonable, to prevent the violation of any right of the

23  trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137

24  (9th Cir. 2006) (citing 15 U.S.C. § 1116).   To grant a permanent

25  injunction, Plaintiff must demonstrate: 1) actual success on the merits;

26  2) a likelihood of irreparable injury if injunctive relief is not

ORDER ~ 5

1  granted; 3) a balance of hardships favoring Plaintiff; and 4) that an
2  injunction will advance the public interest. *Winter v. Natural Res. Def.*
3  *Counsel*, 555 U.S. 7, 20 (2008).

4      Here, Plaintiff has achieved actual success on the merits as a
5  result of Defendant's default. Plaintiff is also at risk of suffering
6  irreparable harm because, in addition to a loss in profits, Plaintiff
7  stands to suffer a loss to its consumer goodwill as a result of
8  Defendant's infringement. *See Rent-A-Center, Inc. v. Canyon Tel. &*
9  *Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (recognizing
10 that "intangible injuries, such as damage to ongoing recruitment efforts
11 and goodwill, qualify as irreparable harm") (citing *Regents of Univ. of*
12 *Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 519-20 (9th Cir. 1984)). The
13 balance of hardships also favors Plaintiff because while Plaintiff stands
14 to lose profit and consumer goodwill absent an injunction, a permanent
15 injunction will only require Defendant to *cease* its infringement, thereby
16 foregoing no legitimately-acquired benefit. Finally, an injunction is
17 in the public interest because "[t]he public has an interest in avoiding
18 confusion between two companies' products." *Internet Specialties W.,*
19 *Inc. v. Millon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir.
20 2009).

21 **III. Forced Transfer of the "Magnamazing.com" Domain Name**

22     While federal courts have broad discretion to fashion a remedy which
23 alleviates the confusion caused by trademark infringement, forced
24 transfer of a domain name remains an extraordinary remedy. For example,
25 in *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174
26 F.3d 1036 (9th Cir. 1999), the Ninth Circuit preliminarily enjoined the

defendant from using the domain name "movie-buff.com" in direct competition with the plaintiff, the owner of the federally-registered trademark "Moviebuff." *Brookfield*, 174 F.3d at 1066-67. Despite the court's finding that the defendant's use of the "movie-buff.com" web site likely infringed the plaintiff's "Moviebuff" mark, the court did not order the transfer of the offending domain name. *Id.* "In fact, only upon proving the rigorous elements of cyber-squatting under the [Anticybersquatting Consumer Protection Act] have plaintiffs successfully forced the transfer of an infringing domain name." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 948 (9th Cir. 2002).

Here, while Defendant's use of the "Magnamazing.com" domain name likely infringed Plaintiff's "Magnabilities" mark, Plaintiff has not alleged a cause of action under the Anticybersquatting Consumer Protection Act. Nor has Plaintiff demonstrated why the Court should exercise its discretion under the Lanham Act to require transfer of the "Magnamazing.com" domain name to Plaintiff. The Court thus denies Plaintiff's motion with respect to the forced transfer of "Magnamazing.com."

**IV. Conclusion**

For the foregoing reasons, the Court enters judgment in favor of Plaintiff, grants Plaintiff's request for a permanent injunction, and denies Plaintiff's request for forced transfer of the "Magnamazing.com" domain name.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Plaintiff's Motion for Default Judgment, **ECF No. 9**, is **GRANTED in part and DENIED in part.**

ORDER ~ 7

1  2. Judgment shall be **entered** for Plaintiffs as follows:

2  Defendant, his agents, representatives, servants, employees,

3 attorneys, successors, and assigns, and all others in active concert,

4 participation, or privity with Defendant, are hereby permanently enjoined

5 and restrained from manufacturing, producing, sourcing, importing,

6 selling, offering for sale, distributing, advertising, or promoting any

7 jewelry products using the "Magnabilities" mark or any other words or

8 symbols that so resemble the "Magnabilities" mark as to be likely to

9 cause confusion, mistake, or deception, including, but not limited to,

10 "Magnamazing."

11  3. This file shall be **closed.**

12  **IT IS SO ORDERED.** The District Court Executive is directed to enter

13 this Order and provide copies to counsel of record.

14  **DATED** this _____26th_____ day of September, 2011.

15

16       S/ Edward F. Shea
         EDWARD F. SHEA
17      United States District Judge

18
 Q:\Civil\2011\115.grant.default.lc2.frm
19

20

21

22

23

24

25

26

ORDER ~ 8